UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARMAC LLC, D/B/A MCDONOUGH MARINE SERVICE | CIVIL ACTION |
| versus | No. 06-4905 |
| MERIDIAN RESOURCE & EXPLORATION, LLC | SECTION: I/5 |

ORDER AND REASONS

Before the Court is a motion for summary judgment by third-party defendant Westport Insurance Company ("Westport") against defendant and third-party plaintiff Meridian Resource & Exploration, LLC ("Meridian"). For the reasons set forth below, the motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

*Background*

This third party claim arises from a dispute between Meridian and Westport regarding coverage under insurance policies issued by Westport. On August 28, 2006, plaintiff, Marmac LLC d/b/a McDonough Marine Services ("McDonough"), filed a lawsuit in this Court against Meridian to recover all costs and expenses in connection with recovering and repairing two barges which Meridian had chartered from McDonough.[1] On October 2, 2006, Meridian assumed the role of third-party plaintiff and made Westport a

---

[1] Rec. Doc. No. 1.

-1-

third-party defendant. Meridian asserts that it is entitled to recover as an additional assured under two insurance policies issued by Westport to McDonough which insured the barges.[2]

On April 23, 2007, Westport filed its motion for summary judgment against Meridian, asserting that since the insurance policies Westport issued to McDonough did not name Meridian as an additional assured and since Meridian failed to comply with the charter party agreements' requirements for becoming an additional assured, Meridian cannot recover under the Westport insurance policies issued to McDonough. Westport further asserts that neither Meridian's Master Service Agreement nor any certificates of insurance sent to Meridian allow Meridian to recover as an additional assured.[3]

*Relevant Facts*

Westport Policy Provisions

On or before August 29, 2005, Barge MCD 378 and Barge KS 329, both owned by McDonough, allegedly sustained damages while in the care and custody of Meridian.[4] Westport provided Hull Insurance and Protection and Indemnity Insurance to McDonough for the two barges under policies UMS-300294-00 and UMS 300295-00,

---

[2]Rec. Doc. No. 5, pp. 5-6.

[3]Rec. Doc. No. 19-4.

[4]Rec. Doc. No. 1, p. 3.

respectively, from October 1, 2004 to October 1, 2005.[5]   Both
Westport policies contained the following provision:

    1.   Assured, Named Assured, Additional Assured, Loss
        Payee, and Underwriters:

        The term "Named Assured" as used in the Policy
        refers to MARMAC CORPORATION D/B/A MCDONOUGH
        MARINE SERVICE, and any subsidiary, affiliate
        or parent companies.  "Named Assured" shall
        include any executive officer, director,
        stockholder, or trustee of the "Named
        Assured", while acting in their capacity as
        such.

        The Term "Additional Assured" is any party
        other than the "Named Assured" to whom
        specific privileges and protections under this
        policy [Covernote], as hereinafter provided,
        have been extended by the "Named Assured".[6]

Both insurance policies further state, in pertinent part:

    10.   Privileges Granted:

        The Named Assured shall have the option to
        restrict or limit coverage under this policy
        [Covernote] as respects Additional Assureds so
        as not to extend coverage beyond that agreed
        to in the Barge Charter Party or other
        Maritime Contract.  When the Named Assured
        restricts or limits Covernote coverage to an
        Additional Assured by the terms of the Barge
        Charter Party or other Maritime Contract, the
        Charter Party or Contract shall govern the
        Policy [Covernote] limits and coverage
        extended to an Additional Assured.

    11.   Release Agreements/Waivers of
        Subrogation:

---

[5]Rec. Doc. No. 19-5; Rec. Doc. No. 19-6.

[6]Rec. Doc. No. 19-5, p. 37; Rec. Doc. No. 19-6, p. 34.

> It is hereby understood and agreed that, where required by contract or agreement and subject to restrictions therein, the Named Assured is granted privilege to include hereunder other parties as Additional Assureds, to grant release from liability, and to waive these Underwriters' rights of subrogation.[7]

## Barge Charter Party Agreements

Barge MCD 378 and Barge KS 329 were bareboat chartered to Meridian on May 5, 2004 and June 8, 2005, respectively.  Barge MCD 378 was allegedly chartered under Bareboat Charter Party L3445, and Barge KS 329 was allegedly chartered under Bareboat Charter Party L4047.[8]  Both charter party agreements contained the following provision in regards to becoming an additional assured under McDonough's current insurance:

> The insurances agreed to herein and provided by LESSOR shall not name CHARTERER as additional assured unless CHARTERER requests such status in writing to LESSOR and fully executes this charter party and returns same to LESSOR.[9]

McDonough asserts that the charter party agreements were sent to Meridian in the normal course of business, but concedes that no one at McDonough can definitely state that the agreements in question

---

[7] Rec. Doc. No. 19-5, pp. 43-44; Rec. Doc. No. 19-6, pp. 39-40.   In other words, the Westport policies insured McDonough and whomever McDonough named as an additional assured.  Therefore, under the insurance policy terms, Westport was only bound to additionally insure those whom McDonough designated as "Additional Assured."  Additionally, under these provisions, McDonough could restrict or limit coverage to an additional assured by the terms of its bareboat charter party or by another maritime contract.

[8] Rec. Doc. No. 19-7, pp. 1-2.

[9] Rec. Doc. No. 19-7, pp. 3, 5.

-4-

were mailed to Meridian.[10]   In a sworn affidavit, Meridian's representative asserts that she has no record or recollection of receiving the charter party agreements prior to accepting delivery of the barges.[11]  As of August 29, 2005, Meridian had not executed the charter party agreements or, according to McDonough, requested in writing that McDonough name Meridian as an additional assured.[12]

Both charter party agreements contained the following provision with regard to the effect of the charter party:

> Delivery to and use by CHARTERER of the barge, which may include any actions taken by CHARTERER under any provision of this charter, establishes conclusively that all of the terms and conditions of this Barge Bareboat Charter Party are in effect.[13]

Meridian's Master Service Agreement

In addition to the effect of the charter party agreements, one of the key issues in this dispute is whether Meridian's Master Service Agreement ("MSA") allows Meridian to recover as an additional assured.  The MSA states, "CONTRACTOR agrees that all of CONTRACTOR'S insurance policies shall name Company Group as Additional Insureds."[14]   The MSA submitted to the Court is not

---

[10] Rec. Doc. No. 25-4, p. 2.

[11] Rec. Doc. No. 26-10.

[12] Rec. Doc. No. 19-7, pp. 1-2.

[13] Rec. Doc. No. 19-7, pp. 4, 6.

[14] Rec. Doc. No. 20-12, p. 12.

signed by McDonough,[15] but Meridian asserts that the parties agreed to the MSA.

In support of its contention, Meridian cites to letters and emails exchanged between Meridian's Purchasing Manager, Alicia Selby, and McDonough's Senior Vice President, Pat Stant. Communication began on February 1, 2001, when Selby sent a letter to Stant stating that, in order for McDonough to remain on Meridian's Approved Vendor's List, McDonough and Meridian would have to agree on certain terms. The terms included McDonough's execution of the MSA and Meridian's receipt of certificates of insurance from McDonough's insurance carriers for the types and amounts of insurance as specified in the MSA.[16]

On July 20, 2005, Selby sent another letter addressed to Stant stating that she had neither heard from Stant nor received the MSA, and that to remain on Meridian's Approved Vendor's list, McDonough would need to execute the MSA and send a certificate of insurance.[17] In an email response dated August 1, 2005, Stant notified Selby of his receipt of her July 20, 2005 letter, directing her attention to a February 13, 2001 letter he claimed was sent to Selby in response to her February 1, 2001 letter. Stant's February 13, 2001 letter stated that McDonough did not

---

[15]Rec. Doc. No. 20-12, p. 9.

[16]Rec. Doc. No. 20-11.

[17]Rec. Doc. No. 20-6.

believe that the MSA was appropriate for their line of business. Selby responded the same day to Stant's August 1, 2005 email and stated that Meridian must have misplaced his February 13 letter and that it would be sending him a new MSA.[18]

On March 9, 2006, Selby sent an email to McDonough, which stated, "In the future going forward, we would like to get a Master Service Agreement to cover all future marine charters" and Selby proposed to negotiate a new MSA between both companies that would cover such marine equipment.[19]   Stant responded by email on March 13, 2006 to Selby's request by again attaching his letter of February 13, 2001 and, in response to her proposal, stating that the companies could come to an agreement "provided the spirit is that of the obligations of the charter party."[20]   Finally, on March 16, 2006, Selby responded that she had never seen Stant's February 13, 2001 letter, but she had a note in her file that he said he had responded.   Further she stated that Meridian did not have a special MSA for marine equipment, but it was willing to modify its standard MSA "for future use" if both parties were to agree on the terms and conditions.[21]

<u>Certificates of Insurance</u>

---

[18]Rec. Doc. No. 20-14, pp. 4-5.

[19]Rec. Doc. No. 20-14, pp. 2-3.

[20]Rec. Doc. No. 20-14, pp. 1-2.

[21]Rec. Doc. No. 20-14, p. 1.

The final key issue in this dispute is whether certificates of insurance sent by McDonough's insurance broker establish that Meridian is allowed to recover from Westport as an additional assured.  On December 6, 2004, Meridian received from McDonough's insurance broker, McGriff, Seibels & Williams of Texas, Inc. ("McGriff") a certificate of insurance addressed to Meridian certifying that McDonough was insured through Westport under Hull Insurance Policy UMS-300294-00 and Protection and Indemnity Insurance Policy UMS-300295-00.[22] The certificate of insurance also stated it "neither affirmatively nor negatively amends, extends or alters the coverage afforded by those policies."[23]

Then again on July 28, 2005, Meridian received from McGriff another certificate of insurance addressed to Meridian.[24]  Like the previous certificate of insurance, this certificate certified McDonough was insured through Westport under Hull Insurance Policy UMS-300294-00 and Protection and Indemity Insurance Policy UMS-300295-00, and it also stated that the certificate "neither affirmatively nor negatively amends, extends or alters the coverage afforded by those policies."[25]  However, unlike the previous certificate of insurance, this second certificate contained

---

[22]Rec. Doc. No. 20-10.

[23]Rec. Doc. No. 20-7.

[24]Rec. Doc. No. 20-10.

[25]Rec. Doc. No. 20-13.

additional language, set forth later in this opinion, that Meridian asserts proves its status as an additional assured.[26]

***Law and Analysis***

**I.   Rule 56 Standard**

Summary judgment is proper when, after reviewing the "pleadings, depositions, answers to interrogatories . . . [and] affidavits," the court determines that there is no issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 266 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.; Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986) (internal quotation omitted).

Once the party seeking the summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

---

[26]Rec. Doc. No. 20-13.

The showing of a genuine issue is not satisfied by creating some metaphysical doubt as to the material facts by conclusory allegations, unsubstantiated assertions, or by only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The non-moving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." *Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S. Ct. 1545, 1551-52, 143 L. Ed. 2d 731 (1999) (internal quotation and citation omitted) (alternation in original).

## II.  Analysis

The dispute in this case centers on whether Meridian was an additional assured under the insurance policies issued by Westport to McDonough. As previously stated, Westport argues: 1) that Meridian did not meet the requirements to become an additional assured as stipulated in McDonough's charter party agreements, 2) that McDonough never agreed to Meridian's Master Service Agreement ("MSA") which required that Meridian be named an "additional

assured" under McDonough's insurance policies, and 3) that the certificates of insurance sent by McDonough's insurance broker to Meridian did not make Meridian an "additional assured" under the policies.

The parties principally dispute what agreement(s) should be recognized as governing the chartering of Barge MCD 378 and Barge KS 329.   Westport asserts that McDonough's Bareboat Charter Parties L3445 and L4047 govern the chartering of Barge MCD 378 and Barge KS 329, respectively.   As stated, both charter party agreements contain the following provision:

> The insurances agreed to herein and provided by LESSOR shall not name CHARTERER as additional assured unless CHARTERER requests such status in writing to LESSOR and fully executes this charter party and returns same to LESSOR.[27]

Accordingly, for Meridian to have become an additional assured pursuant to the charter party agreements it must have 1) requested that it be added to McDonough's insurance in writing, and 2) executed the charter party agreements and returned them to McDonough.

Westport argues that McDonough never became an "additional assured" under McDonough's insurance policies because at no time prior to August 29, 2005 did Meridian send a written request for McDonough to name Meridian as an additional assured, nor did

---

[27]Rec. Doc. No. 19-7, pp. 3, 5.

Meridian fully execute Bareboat Charter Parties L3445 and L4047.[28]
In opposition, Meridian argues that it was an additional assured
pursuant to Meridian's Master Service Agreement ("MSA").

The MSA provides, "CONTRACTOR agrees that all of CONTRACTOR'S
insurance policies shall name Company Group [Meridian] as
Additional Insureds."[29] Therefore, Meridian argues, McDonough was
required to add Meridian as an "Additional Assured" to their
insurance policies pursuant to the MSA.  In an affidavit submitted
in opposition to Westport's motion, Alicia Selby, purchasing
manager at Meridian, further asserts, "[I]t was my understanding
that McDonough was to provide insurance on all barges chartered by
Meridian from McDonough, that McDonough would name Meridian as
additional assured on its policies ... all as specified in
Meridian's Standard MSA."[30]

The Court finds, however, that McDonough never bound itself to
Meridian's MSA, and that no reasonable trier of fact could find
otherwise.  The evidence presented shows that Selby sent two
letters to Pat Stant, Senior Vice President of McDonough,
requesting execution of the MSA to remain on Meridian's Approved
Vendor's List.  However, there is no evidence to show that the MSA

---

[28]Rec. Doc. No. 19-7, pp. 1-2.

[29]Rec. Doc. No. 20-12, p. 12.

[30]Rec. Doc. No. 20-10, p. 2.

was ever executed or agreed to by McDonough.[31]  There is no signed
MSA agreement between Meridian and McDonough, and the evidence is
clear that McDonough never agreed to the MSA or intended to be
bound by the MSA.  The emails exchanged between Selby and Stant
establish that McDonough was not of the opinion that the MSA was
appropriate for its marine business and that McDonough had no
intention of executing it.[32] Taking the statements in the Selby
affidavit as true, her "understanding" does not create a disputed
issue of material fact given that her own correspondence reveals no
final agreement on the MSA was reached.  Therefore, no reasonable
trier of fact could conclude that McDonough agreed to add Meridian
as an "additional assured" pursuant to the MSA agreement.

As the MSA is inapplicable, the question remains whether
Meridian was bound by McDonough's bareboat charter party agreements
and whether a genuine issue of material fact exists as to what
contractual arrangement governed relations between the parties.

The interpretation and construction of a charter party is
governed by federal law.  *Atlantic Lines, Ltd. v. Narwhal, Ltd.*,

---

[31]Rec. Doc. No. 20-11; Rec. Doc. No. 20-6.

[32]On August 1, 2005 and March 9, 2006, Stant attached a letter, which he
claimed he originally sent on February 13, 2001, and expressly stated that
McDonough was not going to execute the MSA because it was inappropriate for
McDonough's line of business.  In March 2006, long after the barges in
question were chartered and the damages had occurred, Selby and Stant
exchanged emails discussing the creation of a modified MSA.  Rec. Doc. No. 20-
14.  In Stant's March 13, 2006 email, he explained that McDonough could only
agree to a modified MSA if "the spirit is that of the obligations of the
charter party."  Rec. Doc. No. 20-14, p. 1.

514 F.2d 726, 731 (5th Cir. 1975).   "Charter parties are to be construed with the general principles of contractual construction." *Otto Candies, Inc. v. McDermott Intern., Inc.*, 600 F. Supp. 1334, 1339 (E.D. La. 1985).

In *Falcon Const. Co. v. Bacon Towing Co., Inc.*, 613 F. Supp. 221 (S.D. Tex. 1985), a construction company sought to recover for materials that were damaged while being transported on a barge leased from McDonough that partially capsized.   *Id.* at 223.   The charter party agreement contained similar provisions to the charter party agreements in this case, but the plaintiff claimed that since that charter party agreement was never executed, it was not binding.   *Id.* at 225.   As in the present matter, the charter party agreement provided for acceptance of its terms by acceptance of the barge.   The Court held that the charter party agreement was binding because "by accepting and using the barge, Plaintiff became bound by the terms of the unsigned charter party."   *Id*. at 225. Therefore, the court rejected plaintiff's contention that an oral or implied charter existed.   *Id.*

Both Bareboat Charter Party L3445 for Barge MCD 378 and Bareboat Charter Party L4047 for Barge KS 329 contain a provision that states:

> Delivery to and use by CHARTERER of the barge, which may
> include any actions taken by CHARTERER under any
> provision of this charter, establishes conclusively that
> all of the terms and conditions of this Barge Bareboat

Charter Party are in effect.[33]

It is undisputed that Meridian accepted and used the barges in question.  However, in this case, unlike in *Falcon*, there is a dispute as to whether Meridian, prior to accepting the barges, received the charter party agreements and had knowledge of their content.[34]  This is a dispute over a genuine issue of material fact, as the charter party agreements would govern if Meridian received them prior to accepting the barges.

Therefore, full summary judgment is precluded.  At trial, the Court must determine if the charter party agreements were received and govern or if an oral agreement governed the barge charters and relations between the parties.[35]  The relevance, if any, of the certificates of insurance is intertwined with the factual dispute over what agreement governed relations between the parties and any judgment regarding those certificates is properly withheld for trial.

For the above and foregoing reasons, and notwithstanding the fact that the Court has a genuine concern as to whether Meridian

---

[33]Rec. Doc. No. 19-7, p. 4.

[34]While the Court notes that Westport has submitted invoices and other evidence of a history of barge charters between McDonough and Meridian, *see* Rec. Doc. No. 25, no evidence in the record definitely establishes that Meridian received the charter party agreements in question or agreed to be bound by them.  Accordingly, that issue is a disputed issue of material fact.

[35]As stated, the Court already has determined that Meridian's MSA is inapplicable.

will be able to prevail on its third-party claim at trial,

**IT IS ORDERED** that the motion[36] for summary judgment by third-party defendant Westport Insurance Company against third-party plaintiff Meridian Resource & Exploration, LLC is **GRANTED IN PART** to the extent that Meridian seeks recovery based on its MSA agreement and **DENIED IN PART** as to any alternative contractual basis for recovery.

New Orleans, Louisiana, June ____7th____, 2007.

                                      **LANCE M. AFRICK**
                    **UNITED STATES DISTRICT JUDGE**

---

[36]Rec. Doc. No. 19.